UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY EUGENE DRAPER,

    Plaintiff,

v.                                                          Case No. 1:22-cv-656
                                                            Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for supplement security income (SSI).

       This is the second time the Court has addressed plaintiff's claim for SSI. In her decision dated June 1, 2021, administrative law judge (ALJ) Colleen Mamelka pointed out that, "[t]his case is before me on remand from the Appeals Council pursuant to a remand from the United States District Court for the Western District of Michigan (C7A)." PageID.987. ALJ Mamelka's decision referred to this Court's reversal and remand in *Jeffrey Eugene Draper v. Commissioner of Social Security*, 1:18-cv-1157, 2020 WL 1443249 (W.D. Mich. March 25, 2020). The Court's opinion provided in pertinent part:

> Plaintiff applied for SSI on January 26, 2015, alleging a disability onset date of January 31, 2013. PageID.125. He identified his disabling conditions as chronic obstructive pulmonary disease (COPD) ("uses oxygen and nebulizer"), back problems (two bulging discs, herniated), bone spurs in neck, migraines, past malignant melanoma cancer, enlarged heart, and high blood pressure. PageID.330.

1

> Prior to applying for SSI, plaintiff earned a GED and truck driver training, and had past employment as an automotive technician. PageID.132. . . .
>
> At step three, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *See Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 416.925(d).
>
> Plaintiff contends that his conditions meet or equal the criteria of Listing 1.04A. Plaintiff's Brief (ECF No. 14, PageID.997-999). The ALJ's evaluation at step three consisted of one sentence, "[t]he severity of the claimant's physical impairments, considered singly and in combination, does not meet or medically equal the criteria of any impairment listed in 1.02, 1.04, or 3.02." PageID.129.
>
> Here, the ALJ has provided no explanation for why he found that plaintiff's condition did not meet the requirements of Listing 1.04. . . .
>
> Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate whether plaintiff meets the requirements of Listing 1.04.A and articulate the reasons why plaintiff meets, or does not meet, the requirements of that listing. A judgment consistent with this opinion will be issued forthwith.

*Draper*, 2020 WL 1443249 at *1, 3-4, 7.

On remand, the Appeals Council entered an order dated July 25, 2020, which remanded the case to the ALJ:

> The U.S. District Court for the Western District of Michigan, Southern Division (Civil Action Number 1:18-CV-01157) has remanded this case to the Commissioner of Social Security for further administrative proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act.
>
> The claimant filed a subsequent claim for Title XVI disability benefits on August 27, 2018, and was found disabled as of December 6, 2018. The Appeals Council reviewed the determination and concludes it is supported by substantial evidence. Therefore, the Appeals Council affirms the determination that the claimant has been disabled since December 6, 2018.

2

> However, the period prior to December 6, 2018 requires further adjudication. Therefore, the Appeals Council vacates the final decision of the Commissioner of Social Security dated November 8, 2017 and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court.
>
> In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision for the period prior to December 6, 2018.

PageID.1077-1078.

Before the ALJ held the new hearing, the regulations revised the listings related to musculoskeletal disorders. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 FR 78164-01, 2020 WL 7056412 (Dec. 3, 2020). Under the revision, Listing 1.04A no longer exists. The new rules became effective on April 2, 2021. *Id*. at *78164. In this regard, the agency stated that,

> As we noted in the dates section of this preamble, these final rules will be effective on April 2, 2021. We delayed the effective date of the rules to give us time to update our systems, and to provide training and guidance to all of our adjudicators before we implement the final rules. The current rules will continue to apply until the effective date of these final rules. When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date. [FN 2].

*Id*. In FN 2, the agency stated,

> This means that we will use these final rules on and after their effective date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. *If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand*.

*See* FN2, 2020 WL 7056412 (emphasis added). Finally, as defendant correctly pointed out, the new listing applied to plaintiff's claim on remand from this Court:

> The agency's regulatory rule-making was permissible. It could permissibly direct that the revised listings were to apply to all pending cases, even those cases on remand where the claimant's alleged onset date, application date, first hearing, vacated ALJ decision, and court remand occurred prior to the effective date of the revised listings. In *Combs v. Commissioner of Social Security*, the Sixth Circuit held that a change in a rule governing the adjudication of social security disability benefits claims that is applied as of its effective date to all pending cases does not have an impermissibly retroactive effect. 459 F.3d 640, 642 (6th Cir. 2006).

Defendant's Brief (ECF No. 10 PageID.1323-1324).

> With that background, ALJ Mamelka addressed the current appeal as follows:
>
> On May 11, 2021, I held a telephone hearing due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. All participants attended the hearing by telephone. The claimant agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing (Exhibit C23B, Hearing Testimony). The claimant is represented by Charles A. Robison, an attorney. Also appearing and testifying was Judith K Findora, an impartial vocational expert.
>
> The claimant is alleging disability since January 31, 2013. The claimant filed a subsequent claimant for Title XVI disability benefits August 27, 2018 and was found disabled as of December 6, 2018. The Appeals Council affirmed the determination that the claimant was disabled since that time. This decision address the period from the claimant's application date through December 5, 2018, the date prior to the finding of disabled. Pursuant to the District Court remand order, Appeals Council directed the directed the undersigned to re-evaluate whether the claimant met the requirements of Listing 1.04A and provide articulation for such (Exhibit C7A, C9A). The prior decision was vacated (C9A).
>
> The claimant previously filed a prior application for a period of disability and disability insurance benefits in July 2011. Administrative Law Judge Thomas English issued a decision on January 30, 2013, finding that the claimant was not disabled (C1A). On April 11, 2014, the Appeals Council denied review (C2A). . . .

PageID.987.

ALJ Mamelka proceeded to review plaintiff's previous claim for SSI *de novo* and concluded that plaintiff was not under a disability within the meaning of the Social Security Act since January 26, 2015, the date the application was filed, through December 5, 2018.

4

PageID.1000. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

5

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.   ALJ's DECISION

As discussed, the ALJ's decision is limited to the period of January 26, 2015, through December 5, 2018 (the "relevant time period"). Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity during the relevant time period. PageID.990. At the second step, the ALJ found that plaintiff had severe impairments of hypertension, headaches, COPD, degenerative disc disease of the cervical and lumbar spine with stenosis and radiculopathy, and cerebral aneurysm. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.993.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant requires the use of single, hand-held assistive device for ambulation. He can frequently balance and occasionally rotate/flex neck, climb ramps/stairs, crouch, stoop, use foot controls, or overhead reach with left upper extremity. He cannot climb ladders, ropes, or scaffolds, kneel, crawl, or have exposure to unprotected heights or dangerous moving machinery. He cannot tolerate extreme cold, heat, humidity, wetness or concentrated exposure to environmental irritants (such as fumes, dust, gases, or odors) or poorly ventilated areas.

7

PageID.995.  The ALJ also found that plaintiff is unable to perform his past relevant work as an automotive technician.  PageID.998.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy.  PageID.999-1000.  Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, light exertional level work in the national economy such as an administrative support clerk (350,000 jobs), cashier (800,000 jobs), and sorter (320,000 jobs).  PageID.999.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since January 26, 2015 (the date the application was filed) through December 5, 2018 (the day before he was found disabled).  PageID.1000.

### III. DISCUSSION

Plaintiff raised one issue on appeal:

**Did the ALJ abuse her discretion when she failed to comply with the court's prior remand order?**

Plaintiff contends that the ALJ did not comply with the Court's order of remanding directing her to re-evaluate whether Listing 1.04A was met or equaled.  Rather,

> On remand, the ALJ flouted the court's instructions by impermissibly supplanting her opinion for the medical judgment of Plaintiff's treating physician, just like the ALJ before her. Therefore, the ALJ's decision is not supported by substantial evidence and must be reversed. . . Here the ALJ followed neither the court order nor the Appeals Council remand order.

> Here the ALJ was ordered to re-evaluate whether Listing 1.04A was met or equaled. Not pose a question of whether Listing 1.04A was still applicable to a remand case where the AOD [alleged onset date] occurred while the Listing was in effect and the initial faulty evaluation occurred while Listing 1.04A was still in effect. The court was quite clear when it remanded this case for re-evaluation of Listing 1.04A. There is no mystery as to the burden passed on to the ALJ. But the ALJ's uncertainty may have been the reason that Listing 1.04A was inadequately analyzed.

Plaintiff's Brief (ECF No. 9, PageID.1309).

As discussed, the Court directed the Commissioner to re-evaluate plaintiff under Listing 1.04A. However, as discussed, while the case was on remand, the agency Listing 1.04A was superseded by Listing 1.15. In her decision, ALJ Malkema stated,

> The musculoskeletal listings were revised effective April 2, 2021. Listing 1.04A is no longer applicable; however it is addressed below.

PageID.993. ALJ Malkema identified Listing 1.15 as the revised listing and her decision reviewed plaintiff's claim under this revised listing:

> Listing 1.15 requires a disorder of the skeletal spine resulting in compromise of a nerve root, documented by:
>
> A. Neuro-anatomic (radicular) distribution of pain, paresthesia, or muscle fatigue consistent with compromise of the affected nerve root; and
>
> B. Radicular distribution of neurological signs present during physical examination or diagnostic testing, evidenced by muscle weakness; signs of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root; and either sensory changes or decreased deep tendon reflexes; and
>
> C. Findings on imaging consistent with compromise of a nerve root in the cervical or lumbosacral spine; and
>
> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following: 1) A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or 2) An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or 3) An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and

9

> complete work-related activities involving fine and gross movements.
>
> In this case, as discussed in more detail below, the claimant's degenerative disc disease fails to rise to listing level severity under Listing 1.15. The record does not establish medical documentation of part D. While the record notes he was prescribed a one-handed cane, there is no additional evidence revealing an inability to use the other upper extremity to independently initiate, sustain, or complete work-related activities involving fine/gross movement. Treatment notes reveal a stable gait with use of his cane for support. There were no noted deficits in his upper extremities. Reflexes were intact, there was 5/5 muscle strength in his upper extremities, and range of motion was intact (Exhibit C2F, C5F, C7F, C11F, C13F, C16F). There is no indication the claimant's assistive device was a bilateral cane. Accordingly, this listing is not met.

*Id*.

In addition, ALJ Mamelka reviewed plaintiff's claim under the old listing, 1.04A:

> As stated above, listing 1.04 is no longer applicable. Assuming *arguendo* this listing would still apply. [sic] The claimant does not meet listing level severity. The claimant's attorney representative argued the claimant met this listing due to an inability to walk a block at a reasonable pace on rough terrain or uneven surfaces. Although this language is used within the old listing when discussing examples of ineffective ambulation (1.00B2b(2), POMS DI 34121.011, POMS DI 34121.013), it ignores the definition of the inability to ambulate effectively as addressed in 1.00B2b(1). Ineffective ambulation is defined generally as having insufficient lower extremity function to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both upper extremities* (1.00B2b(1)- *emphasis added*). The listing further notes that the ability to walk independently in one's home without the use of an assistive device(s), does not, in and of itself, constitute effective ambulation. Accordingly, as a requisite, the use of an assistive device(s) that limits the functioning of both upper extremities must be supported by objective evidence. Ultimately, based on the listing definition requiring the use of an assistive device that limits the function of both upper extremities, this listing is not met. As discussed above, the record reveals the claimant did not need an assistive device that limited the functioning of both upper extremities. The claimant's upper extremity functioning was intact. Physical examinations note occasional decrease range of motion, tenderness, and spasms, but overall, examinations document generally normal range of motion, intact strength, normal reflexes, and normal gait and station (Exhibits C2F, C7F, C11F, C12F, C16F). It is noted that from May 13-15, 2015, the claimant presented to the hospital with left-side weakness which resolved with medical management (C5F). In addition, examinations occasionally note the use of a single, hand-held assistive device; however, this would not limit the functioning of both upper extremities (Exhibits C7F, C9F, C14F, C16F). He admitted to operating a motor vehicle and

10

> other daily activities that require use of both extremities (Exhibits C2F, C5F, C7F, C16F).

PageID.993-994.

The Court recognizes that under the agency's regulatory scheme, plaintiff's claim was pending and subject to the new Listing 1.15. However, the Court also recognizes that during the administrative hearing, both ALJ Mamelka and plaintiff's attorney addressed the superseded Listing 1.04A (as directed by this Court). PageID.1011-1035. For example, at the commencement of the hearing, both plaintiff's attorney and the ALJ acknowledged that Listing 1.04A was focus of the hearing:

> ATTY: I was just going to say, the only issue that I prepared for and that I think are before, does Mr . Draper meet or equal the 1.04(a) [sic] listing?
>
> ALJ: Right. And I don't necessarily disagree with that. I read through the US District Court's remand, and that's the only error that they found. The Appeals Council completely vacated the November decision. So, I'm probably going to ask just additional questions, based on my review of the medical records. But I definitely will focus on the l.04(a) [sic].

PageID.1011. ALJ Malkema also invited argument on the old listing. *See* PageID.1019 ("Mr. Robison, did you want to make any particular argument with respect to 1.04, besides your position that he meets it?"); PageID.1021 ("So, I mean, again, if you could further articulate your argument as it relates to ineffective ambulation, as it ties into 1.04?"); PageID.1025 ("And to be clear, we're talking about the l.04(a) [sic] listing within that timeframe?"). *See also*, PageID.1021-1025 (argument regarding ineffective ambulation under Listing 1.04).

Under the circumstances in this case, the Court cannot overlook the fact that both ALJ Malkema and plaintiff's counsel believed that the administrative hearing – and the step three evaluation of plaintiff's claim – involved Listing 1.04A and the issue of ineffective ambulation. As discussed, the ALJ's subsequent decision addressed both Listing 1.15 and Listing 1.04A. It

appears that the ALJ took this course because while Listing 1.15 applied to this case (which was pending when the revised listing took effect on April 2, 2021), this Court explicitly remanded the case for a re-evaluation under the superseded Listing 1.04A (and the parties held a hearing based on that remand order). It further appears that the ALJ issued alternative rulings under Listings 1.04A and 1.15. Given this record, the Court concludes that the Commissioner complied with, or at least attempted to comply with, the remand order. Accordingly, plaintiff's claim of error is denied.

Nevertheless, this matter will be remanded. Based on the record, the agency's regulations required ALJ Malkema to review plaintiff's claim under Listing 1.15. However, the record is incomplete because the administrative hearing did not include a review of plaintiff's claim under Listing 1.15 and plaintiff did not have an opportunity to address the requirements of the listing. Accordingly, this matter will be remanded pursuant to sentence six of 42 U.S.C § 405(g). On remand, the Commissioner is directed to hold a new hearing to determine whether plaintiff met the requirements of Listing 1.15 during the relevant time period.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REMANDED** pursuant to sentence six of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to hold a new hearing to determine whether plaintiff met the requirements of Listing 1.15 during the relevant time period. An order consistent with this opinion will be issued forthwith.

Dated: September 25, 2023          /s/ Ray Kent
                                    RAY KENT
                                    United States Magistrate Judge